UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KAREN BECKLEY, | ) |
| Plaintiff, | ) No. 4:17-CV-1369 RLW |
| v. | ) |
| ST. LUKE'S EPISCOPAL-PRESBYTERIAN HOSPITALS d/b/a ST. LUKE'S, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendant St. Luke's Motion for Summary Judgment (ECF No. 34). This matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Karen Beckley ("Beckley") was hired in March of 1995 as a Surgical Technician in the Labor & Delivery Department of St. Luke's Episcopal-Presbyterian Hospitals d/b/a St. Luke's (herein, "St. Luke's" or "Defendant"). (Defendant's Statement of Uncontroverted Facts ("DSOF"), ECF No. 36, ¶1). A Surgical Technician is a non-licensed, non-degreed support position with the principal job duty of passing instruments in the operating room. (DSOF, ¶2). In 2012, Beckley sought out a full-time position as a Surgical Technician in the Operating Room Department ("ORD"). (DSOF, ¶5). Beckley obtained the position as a Surgical Technician in the ORD and remained in this position until her termination on March 20, 2015. (DSOF, ¶8). Ginny Babcock ("Babcock") promoted Beckley to the ORD, making her a full-time employee,

with the full understanding that Beckley was already on FMLA[1] leave and would need to take additional FMLA leave in the future. (DSOF, ¶47). Beckley's departmental change was accompanied by a change in some of her job responsibilities, including required "on-call" shifts. (DSOF, ¶¶9-11). As a condition of "on call" shifts, Beckley was required to remain accessible while off-duty during the shift. (DSOF, ¶12). Individuals scheduled for "on-call" shifts, had to be able to report to work within approximately 30 minutes of receiving a call in order to respond to an emergency situation. (DSOF, ¶14).

Following Beckley's first FMLA leave in the ORD, Babcock approved another intermittent FMLA leave, running from February 2013 through August 2013. (DSOF, ¶48). Later, Beckley applied for and was granted FMLA leave from April 2014 through April 2015. (DSOF, ¶49). Beckley notified her supervisor on January 6, 2015 of her need to take FMLA leave from December 31, 2014 through January 29, 2015. (DSOF, ¶71). Beckley's employment was terminated on March 20, 2015. (*Id.*).

Beckley was reprimanded on multiple occasions, each time by a different Charge Nurse regarding her failure to respond appropriately to emergency call requests. (DSOF, ¶16). Each time Beckley was reprimanded, she was counseled on the appropriate on-call procedures and the department's expectations. (DSOF, ¶17). Beckley was informed further work-related issues would lead to higher levels of discipline, including possible termination. (DSOF, ¶18). Beckley received a level 1 warning in March of 2014 for failing to respond to Charge Nurse Patty Cowee's emergency call requests during her scheduled on-call service period. (DSOF, ¶19). Beckley admits that this discipline was unrelated to her taking FMLA. (DSOF, ¶20). Within 5 months of receiving this warning, Beckley received a Level 2 warning and then a Final Warning

---

[1] FMLA refers to the Family and Medical Leave Act of 1993, 29 U.S.C. §§2601, *et seq.*

for again failing to respond to on-call requests. (DSOF, ¶21). Beckley acknowledged that the underlying facts concerning her discipline were correct as she failed to comply with the call-in policy. (DSOF, ¶22). Each disciplinary action involved a different Charge Nurse, none of whom had any role in Beckley's termination. (DSOF, ¶23).

Specifically, on March 13, 2014, Beckley was counseled for inattention to details. (DSOF, ¶24). On another occasion, a student, working under Beckley's supervision, provided a surgeon with a syringe containing an anti-coagulant, instead of saline water. (DSOF, ¶25). Beckley acknowledged that she was ultimately responsible for the mistake, including the mislabeled syringe. (DSOF, ¶26). Babcock did not discipline Beckley for this event even though, in Beckley's estimation, it was a "big deal". (DSOF, ¶¶27-28). During an open patient gall bladder surgery on March 9, 2015, Beckley (1) became accidentally contaminated and failed to follow Hospital sterility policy by walking into the sterile field twice, (2) used poor judgment when counting surgical equipment during surgery, and (3) left the surgical team in the middle of surgery for an extended period. (DSOF, ¶34).

Beckley was informed of her termination on March 20, 2015. (DSOF, ¶43). The notice included her prior warnings, discipline, and a summary of events in the gall bladder surgery. (DSOF, ¶44). Both of Beckley's supervisors, Susan Miller ("Miller") and Babcock, were responsible for Beckley's termination. (DSOF, ¶45).

On or around March 20, 2017, Beckley filed an action in St. Louis County, Missouri Circuit Court alleging claims for Interference with FMLA Rights (Count I) and Retaliation in Violation of FMLA (Count II). (ECF No. 4). On April 21, 2017, Defendant removed this action to federal court, asserting federal question jurisdiction under 28 U.S.C. §§1331. (ECF No. 1). On July 20, 2017, this Court dismissed Count I of Beckley's Complaint. (ECF No. 19, 20). On

March 9, 2018, Defendant filed the instant Motion for Summary Judgment as to Count II of her Complaint. (ECF No. 34).

## DISCUSSION

### I. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to

determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

**B. Discussion**

**1. FMLA Retaliation Claim Standard**

The FMLA prohibits employers from discriminating against an employee for asserting her rights under the Act. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006); *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002) (citing 29 U.S.C. § 2615(a)(2)). "This prohibition necessarily includes consideration of an employee's use of FMLA leave as a negative factor in an employment action." *Darby*, 287 F.3d at 679. "Basing an adverse employment action on an employee's use of leave ... is therefore actionable." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir.2002).

When an employee does not have direct evidence of retaliation, the Court analyzes her FMLA retaliation claim under the *McDonnell Douglas* burden-shifting framework. *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). A plaintiff must first establish a prima facie case. "To establish a prima facie case of FMLA retaliation, an employee must show that she engaged in activity protected under the Act, that she suffered an adverse employment action by the employer, and that a causal connection existed between the employee's action and the adverse employment action." *Darby*, 287 F.3d at 679 (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997)). If a plaintiff is able to establish a prima facie case of retaliation, the burden shifts to the defendant to come forward with evidence of a legitimate,

nondiscriminatory reason for the adverse action. *Phillips*, 547 F.3d at 912. This burden "is not onerous and the showing need not be made by a preponderance of the evidence." *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 860 (8th Cir. 2005). If the defendant does so, the plaintiff must come forward with evidence that creates an issue of fact as to whether the asserted reason was pretext for discrimination. *Smith*, 302 F.3d at 833. "Throughout this analysis, the ultimate burden of persuasion remains with the plaintiff to show the termination was motivated by intentional retaliation." *Macias Soto v. Core-Mark Int'l, Inc.*, 521 F.3d 837, 841 (8th Cir. 2008) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

**2. Discussion**

Defendant argues that Beckley has failed to present evidence of retaliatory animus on the part of the decision-makers or Beckley's co-workers. Beckley's supervisors, Miller and Babcock, were responsible for the terminations of all surgical nurses assigned to the ORD, including Beckley. Defendant contends that Beckley can offer no evidence that either Miller or Babcock acted with retaliatory animus.

Beckley, however, claims she has evidence of discriminatory animus. Beckley asserts that she routinely suffered adverse actions following her exercise of FMLA rights. (ECF No. 41 at 6). Beckley notes that she went on intermittent FMLA leave from August 4, 2014 through November 3, 2014. On or around August 12, 2014, Beckley received a Level 2 Warning by Babcock for an incident that "allegedly occurred on or about July 27, 2014." (ECF No. 41 at 6). On August 25, 2014, Beckley was issued a final warning by Babcock and Miller for an incident "that allegedly occurred on or about August 2, 2014." (ECF No. 41 at 6). Beckley points out

that her final warning had a handwritten note at the bottom of the page, written by Babcock or Miller that said, "Karen went on FMLA, Reason for delay of corrective action." (ECF No. 41 at 6). Then, one month after Beckley's intermittent FMLA leave ended, Beckley received a verbal reprimand on or about December 4, 2014, regarding concerns about basic surgical techniques and sterility. (ECF No. 41 at 7). Beckley again went on consecutive FMLA leave from December 31, 2014 through January, 2015. (ECF No. 41 at 7). She went on intermittent leave from January 20, 2015 through April 20, 2015. (ECF No. 41 at 7). One day after she began her intermittent leave, Beckley received another verbal reprimand regarding concerns about sterility technique. (ECF No. 41 at 7). Then, on March 20, 2015, Beckley was terminated while still on intermittent FMLA leave. (ECF No. 41 at 7-8). Beckley claims that prior to her request for FMLA leave while working in the ORD, she had not received specific complaints about her ability to follow procedures. Beckley claims that her situation is similar to that in *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858 (8th Cir.2006),[2] and the mere timing of her FMLA leave

---

[2] Denise R. Hite sued her employer, Vermeer Manufacturing Company ("Vermeer") and her supervisor, Rick Leedom, for retaliation in violation of the Family and Medical Leave Act (FMLA). The jury returned a verdict in favor of Hite and awarded her back pay. The district court awarded Hite front pay, liquidated damages plus interest, and attorney's fees. The district court[1] subsequently denied Vermeer's and Leedom's motions for judgment as a matter of law or for a new trial and to amend or alter the judgment. The Court of Appeals denied the motions. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 861 (8th Cir. 2006). Importantly, the Eighth Circuit outlined the parameters for using temporal proximity as evidence of causation in a FMLA retaliation case:

> An employee can establish a causal link between her protected activity and the adverse employment action through "the timing of the two events." *Eliserio v. United Steelworkers of Am.*, 398 F.3d 1071, 1079 (8th Cir.2005). "A pattern of adverse actions that occur just after protected activity can supply the extra quantum of evidence to satisfy the causation requirement." *Smith*, 302 F.3d at 832. The mere coincidence of timing, however, is rarely sufficient to establish the causation element. *Haas v. Kelly Serv., Inc.*, 409 F.3d 1030, 1037 (8th Cir.2005). Cases in which we have determined that temporal proximity alone was sufficient to create an inference of the causal link "have uniformly held that the temporal

relative to her reprimands and termination are sufficient to establish a causal connection. (ECF No. 41 at 6-8).

Beckley also claims she has evidence of Defendant's retaliatory motive. (ECF No. 41 at 8). Beckley maintains that numerous employees made comments about her use of FMLA leave and coworkers made jokes about her FMLA leave in front of management, including Babcock. (ECF No. 41 at 8-9). Beckley asserts that other coworkers commented on her accrual of vacation hours and earned time off (ETO), made "digs" at her regarding her use of FMLA leave, and warned her against taking time off for FMLA leave because Defendant would "get rid of" her. Beckley identifies an incident in support of her FMLA retaliation claim where Babcock inquired if Beckley could schedule any of her doctor's visits during off-duty hours. Beckley also refers to the incident when Miller allegedly took Beckley's return-to-work paperwork from the fax machine and asked, "[w]hat is this FMLA too?" (ECF No 41 at 9). Beckley claims that, instead of handing the paperwork to her, Miller said she would take care of it, "as if she 'more or less' did not want to be bothered by" Beckley. (ECF No. 41 at 9).

Finally, Beckley claims she was reprimanded and/or disciplined for minor infractions for which other coworkers were not reprimanded and/or disciplined. (ECF No. 41 at 9). For example, Beckley testified that operating team members commonly took bathroom breaks during procedures without reprimand, even though Beckley was reprimanded for taking a bathroom break on March 10, 2015. (ECF No. 41 at 9-10). In addition, Beckley states that she had not

---

proximity must be 'very close.' " *Wallace v. Sparks Health Sys.,* 415 F.3d 853, 859 (8th Cir. 2005).

*Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006)

been reprimanded for taking a bathroom break prior to her increased FMLA usage in the ORD. (ECF No. 41 at 10). Similarly, Beckley claims that she was only reprimanded or written-up regarding sterility issues, counts, on-call timeliness, and "any other procedure or policy" after her increased FMLA usage. (ECF No. 41 at 10). In sum, Beckley claims that "the temporal proximity between her protected activities and the adverse actions taken against her, the pattern of adverse actions that occurred just after [her] protected actions, the discriminatory comments made to [her] about her FMLA usage, and the escalating discipline imposed upon [her], this Court should rule … [that she] has established a causal link between the employee's exercise of FMLA rights and her termination." (ECF No. 41 at 10).

Beckley further claims that she has provided evidence that the proffered legitimate business decision for terminating her employment was mere pretext. Beckley states that she has shown that Defendant "varied from its normal practice to address [her] situation." (ECF No. 41 at 12). For example, Beckley claims she was singled out for taking a bathroom break during a procedure, even though there was no stated restroom policy. (ECF No. 41 at 12). Likewise, Beckley points to the "strict treatment" she received compared to her coworkers regarding sterility techniques, on-call timeliness, and in-procedure counts. (ECF No. 41 at 12-13). As further evidence of pretext, Beckley claims that she did not receive such reprimands prior to her increased use of FMLA leave. (ECF No. 41 at 13). Beckley also considers the warnings of her coworkers against using FMLA leave as evidence of pretext. (ECF No. 41 at 13).

The Hospital, however, asserts that none of the events outlined by Beckley constitutes evidence of FMLA retaliation. The Hospital told Beckley she was terminated for her conduct during the March 9, 2015 surgical procedure (which included Beckley breaking sterility policy, breaking scrub procedures, and use of poor judgment by emptying her mayo table to perform

surgical counts) and based upon her previous progressive discipline and counseling. (DSOF, ¶72). The Hospital notes that Beckley admitted to the conduct underlying her previous reprimands, which placed her on a final warning. (DSOF, ¶73). The Hospital maintains that Beckley admitted to leaving the operating room during the middle of the procedure and remaining absent for over fifteen minutes, performing an equipment count in the middle of a procedure that made the equipment less accessible to the surgeon, and becoming contaminated. (DSOF, ¶74).

The Court holds that Beckley fails to state a claim for FMLA retaliation based upon the undisputed evidence. Other than some temporal coincidences between her leave requests and warnings she received, Beckley has failed to identify evidence that her FMLA leave had a causal connection with her warnings received and her termination. Beckley has not presented any evidence that her supervisors, Babcock and Miller, discriminated against Beckley for using her FMLA leave for a legitimate purpose. The Court holds that the mere temporal proximity of her leave and the alleged retaliatory discipline she received is insufficient to show a "causal connection." "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.1999) (en banc); *Smith*, 302 F.3d at 832). In order for temporal proximity alone to be sufficient, "the temporal proximity must be very close." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir.2006) (internal quotation marks omitted); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). The Eighth Circuit "has not drawn a definitive line," and this Court likewise finds no need to do so here. *See Sisk v. Picture People, Inc.*, 669 F.3d 896, 900–01 (8th Cir. 2012). Here, the temporal proximity is insufficient to create a factual dispute.

Moreover, the Court notes that it would have been hard to discipline Beckley at any time without it being temporally close to her leave requests, given the frequency that Beckley was on leave. The Court also holds that Beckley has not provided any direct evidence of retaliation. Beckley cites to general instances of people being aware of her FMLA leave status, but fails to cite to any adverse statements made by supervisors. In fact, the only allegedly adverse experience she had with a supervisor regarding her FMLA leave could easily be construed as that supervisor "taking care of" the paperwork to process Beckley's FMLA leave as she said she would. Therefore, the Court holds that Beckley has not alleged direct evidence or a prima facie case of retaliation because she has not alleged a causal connection between her FMLA leave and any adverse employment action.

Likewise, Beckley has failed to demonstrate pretext as part of her second burden for a retaliation claim under the *McDonnell Douglas* burden-shifting framework. *Stallings*, 447 F.3d at 1051. Defendant has come forward with a legitimate, nondiscriminatory reason for firing Beckley. Beckley, however, has failed to demonstrate that the stated reason for her termination was merely pretextual for Defendant's retaliatory animus. "An employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies." *Stalling.*, 447 F.3d at 1052. As the Court reviews Beckley's retaliation claim, it is mindful that it does not "'sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve

intentional discrimination.'" *Stallings*, 447 F.3d at 1052 (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir.1995)).

The Court holds that Beckley has not identified any specific, similarly-situated employees who were treated more favorably. *See Smith*, 302 F.3d at 835 ("An employee can prove pretext by showing the employer meted out more lenient treatment to similarly situated employees who were not in the protected class ... who did not engage in protected activity."). Beckley's general reference to other employees who committed similar violations but were not terminated does not suffice to create a pretextual inference. Beckley fails to come forwards with any specific individual who was treated more favorably than her after similar disciplinary violations. Moreover, Defendant has never deviated from its stated reasons for terminating Beckley. *See Smith*, 302 F.3d at 835 (quoting *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 703 (8th Cir. 1994) ("Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext."). In fact, Defendant provided ample evidence that Beckley faced increasingly severe discipline for her infractions, was notified of the potential for termination if her behavior continued, and then was terminated based upon her failure to rectify her performance issues. Therefore, the Court grants summary judgment because Beckley failed to demonstrate pretext.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant St. Luke's Motion for Summary Judgment (ECF No. 34) is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 31st day of May, 2018.

*/s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**